1
2
3
4                                                       **E-FILED on**   10/28/09
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9               FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                              SAN JOSE DIVISION
11

**United States District Court**
For the Northern District of California

12   UNITED STATES,                          No. CR-09-00263 RMW

13              Plaintiff,

14        v.                                 ORDER DENYING DEFENDANTS'
                                             MOTION TO DISMISS
15   JOSEPH BUDDENBERG, MARYAM
     KHAJAVI, NATHAN POPE A/K/A NATHAN       **[Re Docket Nos. 42, 43, 44, 45]**
16   KNOERL, and ADRIANA STUMPO,

17              Defendants.

18   _____

19        Defendants Joseph Buddenberg, Maryam Khajavi, Nathan Pope, and Adriana Stumpo

20   (collectively "defendants") move to dismiss the indictment charging them under the Animal

21   Enterprise Terrorism Act ("AETA"), 18 U.S.C. § 43 with using a facility of interstate commerce to

22   interfere with an animal enterprise and in connection therewith intentionally placing a person in

23   reasonable fear of death or serious bodily injury.  Defendants contend that the AETA is

24   "unconstitutional on its face in that it is impermissibly overbroad and vague."  Def. Stumpo's Mot. to

25   Dis., p. iv.  The United States opposes the motions, arguing that: (1) the defendants lack standing to

26   the extent that they challenge the constitutionality of sections of the AETA with which they are not

27   charged with violating; and (2) the provisions of the AETA with which defendants are charged with

28

violating are not facially unconstitutional.  For the reasons stated below, the court denies the motion to dismiss.

## I. BACKGROUND

On February 19, 2008, the United States filed a criminal complaint alleging that defendants participated in a series of threatening demonstrations at the homes of a number of UC Berkeley and UC Santa Cruz professors who conduct bio-medical research involving the use of animals.  Because defendants' present motions seek dismissal only on the basis of the AETA's purported facial unconstitutionality, a detailed description of defendants' alleged conduct is not necessary.

On March 9, 2009, the defendants were charged by indictment with using, and conspiring to use,[1] an interstate facility to damage and interfere with the operation of an animal enterprise and in connection with that purpose intentionally placing a person in reasonable fear of death or serious bodily injury.  Although the indictment does not expressly identify the specific subsection of 18 U.S.C. § 43 which is charged, the indictment tracks essentially verbatim the language of §§ 43(a)(1) and (2)(B).  Count Two reads in pertinent part that defendants:

> used and caused to be used a facility of interstate commerce, for the purpose of damaging and interfering with the operations of an animal enterprise, and in connection with that purpose did intentionally place and attempt to place a person in reasonable fear of death of [*sic*], and serious bodily injury to that person, a member of the immediate family of that person, and a spouse and intimate partner of that person by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, and intimidation, in violation of Title 18, United States Code, Section 43.

Indictment ¶ 3.  Count One alleges that defendants conspired in violation of 18 U.S.C. § 371.

18 U.S.C. § 43(a) defines the conduct constituting offenses under the AETA:

> (a)  Offense.— Whoever travels in interstate or foreign commerce, or uses or causes to be used the mail or any facility of interstate or foreign commerce—
>
> > (1) for the purpose of damaging or interfering with the operations of an animal enterprise; and
> >
> > (2) in connection with such purpose—
> >
> > > (A) intentionally damages or causes the loss of any real or personal property (including animals or records) used by an animal enterprise, or any real or personal property of a person or entity having a

---

[1]  The conspiracy charge is brought under 18 U.S.C. § 371 and not under 18 U.S.C. §§ 43(a)(1) and 2(C).  There is no apparent reason for this choice.

**United States District Court**
For the Northern District of California

connection to, relationship with, or transactions with an animal enterprise;

(B) intentionally places a person in reasonable fear of the death of, or serious bodily injury to that person, a member of the immediate family (as defined in section 115) of that person, or a spouse or intimate partner of that person by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation; or

(C) conspires or attempts to do so;

shall be punished as provided for in subsection (b).

Section 43(b) of the AETA sets forth the penalties for various types of violations.  For a violation of § 43(a)(2)(B) that results in no bodily injury the maximum sentence is five years of imprisonment; for a violation resulting in substantial bodily injury the maximum is ten years; for a violation resulting serious bodily injury the maximum is twenty years; and for a violation resulting death the maximum is life imprisonment. 18 U.S.C. §§  43(b)(2)-(5).

The AETA concludes with "Rules of Construction" which provide in relevant part that:

"[n]othing in this section shall be construed - ":

(1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution; [or]

(2) to create new remedies for interference with activities protected by the free speech or free exercise clauses of the First Amendment to the Constitution, regardless of the point of view expressed, or to limit any existing legal remedies for such interference . . . .

18 U.S.C. §§ 43(e)(1)-(2).

## II.  ANALYSIS

Defendants' motion to dismiss the indictment argues that various terms used in 18 U.S.C. § 43 make it unconstitutionally vague and overbroad.  Defendants do not currently argue that the statute is unconstitutional as applied to their conduct, but reserve the right to later bring such a challenge.  Def. Stumpo's Mot. to Dismiss 3 n.1.

### A.      Defendants' Standing to Challenge Subsections Not Charged in the Indictment

The government  argues that because the indictment only charges defendants with the offense set forth in §§ 43(a)(1) and (2)(B) and with the attempt to commit that offense under (2)(C), defendants lack standing to challenge any overbroad or unconstitutionally vague terms in §

43(a)(2)(A) or § 43(a)(2)(C). Section 43(a)(2)(A) proscribes using an interstate facility for the purpose of damaging or interfering with the operations of an animal facility and in connection with such purpose intentionally damaging, or causing the loss of, property used by the animal enterprise or having a connection to an animal enterprise. Section 43(a)(2)(B) does not deal with actual loss of property or property damage. Rather, a violation of § 43(a)(2)(B) requires the intentional placement of a person in reasonable fear of death or serious bodily injury. Defendants are charged with intentionally placing a person in fear of death or serious bodily injury. They are not charged with damaging or causing the loss of property.

The government cites *Serv. Employees Int'l. Union, Local 3 v. Mun. of Mt. Lebanon*, 446 F.3d 419, 424 (3rd Cir. 2006), where the Third Circuit held that plaintiff SEIU lacked standing to challenge the constitutionality of the portion of a city ordinance requiring registration with the city police before engaging in door-to-door solicitation. Although the ordinance also required registration before engaging in canvassing, the union could only challenge the registration before canvassing portion of the ordinance as that was the only conduct in which it had or intended to engage.

> We are not free to hear a party's facial challenge to a municipal regulation that is wholly inapplicable to the party. While the canvassing registration requirement and the solicitation permitting requirements are both found within the ordinance, they clearly establish distinct and independent requirements for their application. Overbreadth doctrine effectively allows a party to challenge separate and hypothetical applications of a regulation only when an otherwise valid application of that same regulation causes the party injury-in-fact. It does not allow a party to challenge a regulation that is wholly inapplicable to the party, regardless of the regulation's location in the statute books.

*Id.* at 424-5.

Defendants contend that they are entitled to challenge the constitutionality of the AETA on the basis that any portion of it is overbroad or vague whether or not they have been charged with violating the allegedly overbroad or vague provision. Defendants argue that *SEIU* should not be applied to criminal cases and that unlike the situation in *SEIU* where the union was not and would not be engaged in soliciting, there is no guarantee that defendants could not be charged with additional substantive violations of the AETA. They also note that the indictment does not specify a particular subsection of the AETA with which defendants are charged. Defendants point to

United States District Court
For the Northern District of California

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) in which the Supreme Court explained that there are exceptions to the traditional rule that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others. *Id.* at 610-615. Defendants specifically refer to language in *Broadrick* stating that litigants may be allowed to challenge a statute where the court may predict or assume that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. *Id.* at 611-12.

The court is not persuaded by defendants' standing argument. First, the indictment, despite referring to 18 U.S.C. § 43 rather than to any specific subsection, clearly only charges defendants with a violation of §§ 43(a)(1) and (a)(2)(B) — including an attempt to do so — and participating in a conspiracy to violate those sections. There is no indication that defendants intentionally caused damage or loss of property thereby violating §§ 43(a)(1) and (2)(A). Second, although defendants in a criminal case have a right to raise the constitutional claims of third parties as well as their own, they still must show injury in fact. *See United States v. Bozarov*, 974 F.2d 1037, 1040 (9th Cir. 1992). A defendant in a criminal proceeding is entitled to "insist that his conduct be judged in accordance with a rule that is constitutionally valid." *Id.* However, a facial challenge cannot be based upon provisions of a statute which caused them no injury and with which they have neither been charged nor threatened to be charged. *See Broadrick v. Oklahoma*, 413 U.S. 601, 609-10 (1973); *SEIU*, 446 F.3d at 424-25.

Defendants lack standing to challenge the facial constitutionality of §§ 43(a)(1) and (2)(A) of the AETA. Accordingly, defendants' facial challenge is limited to a challenge of the constitutionality of the provisions of the AETA with which they are charged, specifically §§ 43(a)(1) and (2)(B) and 43 (a)(1) and (2)(C) (attempt).

### B.      Overbreadth

Defendants assert that the AETA interferes with their constitutional rights of free speech and expression. Although statutes which burden First Amendment rights must be narrowly drawn and not cause others not before the court to refrain from constitutionally protected speech or expression (*Broadrick*, 413 U.S. at 612), the AETA's focus is not on speech but rather on conduct. A statute is

United States District Court
For the Northern District of California

1  facially overboard when its application to protected speech is "substantial, not only in an absolute

2  sense, but also relative to the scope of the law's plainly legitimate applications." *Virginia v. Hicks*,

3  539 U.S. 113, 119-20 (2003).  But as the Court noted in *Hicks,* a facial overbreadth challenge will

4  "[r]arely, if ever, succeed against a law or regulation that is not specifically addressed to speech or to

5  conduct necessarily associated with speech." *Id.* at 124.  That is, when a statute is not aimed

6  primarily at speech, an overbreadth challenge is more difficult to show.  *Humanitarian Law Project*

7  *v. Mukasey*, 552 F.3d 916, 931 (9th Cir. 2009).

8       The provisions of the AETA with which defendants are charged are not specifically

9  addressed to speech or conduct necessarily associated with speech.  Those subsections address

10  conduct that involves the use of any interstate facility and is undertaken for the purpose of damaging

11  or interfering with the operation of an animal facility.  The violation charged against defendants

12  requires an intentional course of conduct involving "threats, acts of vandalism, property damage,

13  criminal trespass, harassment, or intimidation" that place a person in reasonable fear of death or

14  serious bodily injury.  18 U.S.C. § 43(a)(2)(B).  A person could violate the statute without engaging

15  in speech.

16       The provisions of the AETA at issue in this case could potentially affect speech in a very

17  limited way in that the statute does proscribe threats which intentionally place a person in reasonable

18  fear of death or serious bodily injury.  18 U.S.C. § 43(a)(2)(B).  However, "a true threat, that is one

19  where a reasonable person would foresee that the listener will believe he will be subjected to

20  physical violence upon his person, is unprotected by the first amendment." *Planned Parenthood v.*

21  *Am. Coalition of Life Activists*, 290 F.3d 1058, 1075 (9th Cir. 2002) (internal quotation and citation

22  omitted).  A true threat is what the AETA describes.

23       "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to

24  determine whether the enactment reaches a substantial amount of constitutionally protected conduct.

25  If it does not, then the overbreadth challenge must fail. The court should then examine the facial

26  vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct,

27  should uphold the challenge only if the enactment is impermissibly vague in all of its applications."

28  *Hoffman Estates v. Flipside*, 455 U.S. 489, 494 (1982).  Furthermore, "where conduct and not

merely speech is implicated the overbreadth of a statute must be judged in relation to the statute's plainly legitimate sweep." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  The defendants bear the burden of proof in demonstrating substantial overbreadth.  *New York State Club Ass'n., Inc. v. City of New York*, 487 U.S. 1, 14 (1988).

By their terms, §§ 43(a)(1) and (2)(B) criminalize a course of conduct undertaken for the purpose of damaging or interfering with the operation of an animal enterprise and which intentionally places a person in reasonable fear of death or serious bodily injury by threats, acts of vandalism, etc.  In *Humanitarian Law Project*, 552 F.3d at 931-32, the court considered the constitutionality of restrictions in the Antiterrorism and Effective Death Penalty Act ("AEDPA") against "providing material support or resources to a designated organization."  *Id.* at 932.  The court concluded that

> although Plaintiffs may be able to identify particular instances of protected speech that may fall within the statute, those instances are not substantial when compared to the legitimate applications of section 2339B(a).
>    Thus, because AEDPA section 2339B is not aimed at expressive conduct and because it does not cover a substantial amount of protected speech, we hold that the prohibition against providing "material support or resources" to a foreign terrorist organization is not facially overbroad.

*Id.*  Similarly, the AETA is aimed at holding accountable individuals intending to damage or interfere with the operation of animal enterprises from intentionally placing people in fear of death or serious injury.  Since §§ 43(a)(1) and (2)(B) do not cover a substantial amount of protected speech, they are not overbroad.

### C. Vagueness

"A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  *Hill*, 530 U.S. at 732.  "A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process.  To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications."  *Hoffman Estates*, 455 U.S. at 497. Moreover, "every reasonable construction must be resorted to, in order to save a statute from

1    unconstitutionality." *Gonzalez v. Carhart*, 550 U.S. 124, 153 (2007) (internal quotation

2    omitted).

3      **D.  Defendants' Specific Claims of Overbreadth and Vagueness**

4        **1.  Defendants Fail to Identify a Hypothetical Example of Conduct that Would**
       **Fall within the Terms of § 43(a)(2)(B) and Would Constitute Protectable**
5        **Expression**

6      Before considering the particular provisions that defendants offer as the source of their

7    overbreadth challenge to § 43(a)(2)(B), the court notes that nowhere in defendants' moving papers

8    do they provide an example of conduct that would fall within the terms of § 43(a)(2)(B) but would

9    be protectable expression under the First Amendment.  And indeed, in light of the well-established

10    rule that the First Amendment does not protect certain categories of expression (*e.g.*, fighting words,

11    incitements to violence, and true threats[2]), it is difficult to imagine an example of activity which

12    would violate § 43(a)(2)(B) but be constitutionally protected.

13        **2.  Use of the Language "Damaging . . . an Animal Enterprise," "Damages . . .**
       **Personal Property" and "Economic Damage" in the AETA Does Not Render §**
14        **43(a)(1) and (2)(B) Unconstitutionally Overbroad**

15      Defendants contend that the AETA is substantially overbroad because its prohibitions against

16    "damaging . . . an animal enterprise," "damages . . . personal property" and "economic damages"

17    criminally sanction protected activity.  As pointed out above, the subsections charged against

18    defendants impose criminal sanctions on conduct, not protected speech or activity.  Defendants

19    assert that "damages" may include lost business profits or business goodwill and that protected

20    activity such as lawful picketing of an animal enterprise could cause that enterprise to lose profits or

21    business goodwill.  However, the charged subsections of the AETA cannot be construed so as to

22    expose a lawful picketer or animal rights advocate to criminal sanctions because the conduct

23    required for a violation must be both for the purpose of damaging the operations of an animal

24    enterprise and done intentionally to cause reasonable fear of death or serious bodily injury.

25

26    [2] *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942) (holding that a state may punish those
words "which by their very utterance inflict injury or tend to incite an immediate breach of the
peace"); *Cohen v. California*, 403 U.S. 15, 20 (1971) (holding that fighting words – "those

27    personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of
common knowledge, inherently likely to provoke a violent reaction" – are generally proscribable);

28    *Watts v. United States*, 394 U.S. 705, 708 (1969) (holding that the First Amendment permits a ban
on "true threats").

**United States District Court**
For the Northern District of California

The alleged overbreadth of the "damaging" terms would appear at most to relate to punishment for violations of §§ of 43(a)(1) and (2)(A). The AETA contains a definition of "economic damages," which includes "the replacement costs of lost or damaged property or records, the costs of repeating an interrupted or invalidated experiment, the loss of profits, or increased costs." 18 U.S.C. § 43(d)(3).  The phrase "economic damages," however, only appears in the "Penalties" section of the statute, where greater penalties are permitted for greater amounts of economic damages.  The indictment does not charge the defendants with any penalty based upon an amount of "economic damages."  Defendants' worry appears to be that in a particular case lost profits could result from protected activity.  But the language of the statute is important: penalty increases occur when "the *offense results* in economic damage" of varying amounts.  18 U.S.C. §§ 43(b)(2)(A), 43(b)(3)(A), 43(b)(4)(A) (emphasis added).  "The offense" refers to the intentional acts specified in § 43(a)(2)(A) and 43(a)(2)(B).  Any economic damages that factor into the penalty must result from the violation, not from other conduct that might take place simultaneously (e.g., at a demonstration where protected and criminal conduct occurs).  Thus, the "economic damage" penalty provisions do not render the statute overbroad.  In the instant case, defendants are not even charged with a violation that requires there be property damages or loss of property.  Defendants argument that the term "economic damages" renders the statute unconstitutionally overbroad appears applicable, if at all, only to § 43(a)(2)(A).  The court concludes that "economic damages," as used in the penalties section, does not reach a substantial amount of protected speech or expression and is irrelevant to the charge here that involves § 43(a)(2)(B).

### 3. Any Vagueness in "Damaging . . . an Animal Enterprise," "Damages . . . Personal Property" and "Economic Damage" Only Applies to Uncharged Subsections

Defendants contend that the statute's definition of "economic damages" renders it unconstitutionally vague.  As discussed above, the indictment charging the defendants does not allege any "economic damages."  Therefore, whether a charge that included alleged "economic damages" would be vague has no effect on someone charged only with a violation under §§ 43(a)(1) and (2)(B).

### 4. "Interfering" with the Operation of an Animal Enterprise Is Not Overbroad Or Vague

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants argue that the AETA's term "interfering" renders the statute facially overbroad.  But defendants begin with an erroneous premise.  Defendants state that § 43(a)(1) "prohibits 'interfering' with an animal enterprise."  Def. Stumpo's Mot. to Dis., p. 12.  This misstates the statute's clear import.  Interfering with animal enterprises alone is not prohibited.  Rather, the statute prohibits damaging or interfering with the operations and "in connection with such purpose" intentionally damaging or causing the loss of property or engaging in a course of conduct to place a person in fear of death or injury.  18 U.S.C. §§ 43(a)(1), (2)(A), and (2)(B).

Section 43(a)(2)(B) of the AETA, then, is distinct from a few statutes where, on the basis of words like "interfere," unconstitutional overbreadth has been found.  For example, in *City of Houston v. Hill*, 482 U.S. 451, 467 (1987), the Court invalidated a statute that made it "unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest."  *Id.* at 455 (quoting Code of Ordinances, City of Houston, Texas § 34-11(a)).  At issue in *City of Houston* was the prohibition of "in any manner . . . interrupt[ing] any policeman" which, as the court wrote, "is admittedly violated scores of times daily, yet only some individuals – those chosen by the police in their unguided discretion – are arrested."  *Id.*  And in *Dorman v. Satti*, 862 F.2d 432, 437 (2d Cir. 1988), the Second Circuit invalidated a Connecticut statute that prohibited "interfering with the lawful taking of wildlife by another person . . . ."  *Id.* at 433.  The court concluded that statutory terms like "interfere" and "harass" could not be justified as reasonable time, place, or manner restrictions.  *Id.* at 437 (citing *Frisby v. Schultz*, 487 U.S. 474 (1988)).  The statutes in *Hill* and *Dorman*, in prohibiting "interrupting" a policeman and "interfering" with a hunter, directly proscribe vast swathes of conduct, much of it expressive.  The AETA, on the other hand, provides that intentionally placing a person in reasonable fear of death or bodily injury, with the purpose of interfering with an animal enterprise, violates the statute.  18 U.S.C. § 43(a)(2)(B).  Because of the limits on proscribed conduct in § 43(a)(2)(B), the AETA's use of "interfere" is much narrower than in *Hill* and *Dorman*.

The Court upheld a similarly structured statute in *Colten v. Kentucky*, 407 U.S. 104 (1972), where the challenged ordinance stated that "[a] person is guilty of disorderly conduct if, with intent

to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he: . . . (f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." *Id.* at 111. In this ordinance, the broad terms, "to cause public inconvenience, annoyance, or alarm," specify the necessary intent, not the substantive conduct the statute prohibits. The same is true for the AETA.

As the Ninth Circuit wrote in *United States v. Wilfong*, "[t]o 'interfere' is to 'oppose, intervene, hinder, or prevent.' WEBSTER'S NEW WORLD DICTIONARY 704 (3d College ed.1998). 'Interfere' has such a clear, specific and well-known meaning as not to require more than the use of the word itself in a criminal statute." 274 F.3d 1297, 1301 (9th Cir. 2001) (internal quotes omitted) (citing *United States v. Gwyther*, 431 F.2d 1142, 1144 n. 2 (9th Cir.1970)). Defendants provide no basis for the AETA's use of "interfere" not being susceptible to this interpretation, and the court therefore concludes that the required purpose of "interfering with an animal enterprise" does not render the statute unconstitutionally overbroad.

Defendants' argument that the use of the word "interfering" renders the statute unconstitutionally vague is easily dispatched. Defendants provide no basis for concluding that the AETA's use of "interfere" is different than that discussed in *Wilfong*. In their reply, defendants argue that the usages of "interference" in *Wilfong* and *United States v. Bucher*, 375 F.3d 929 (9th Cir. 2004) are constrained by the statutes' provision of the "sort of interference that is punishable." Defs.' Reply 8. Those cases upheld statutes that prohibited interference with a forest officer and a government employee, respectively. *Wilfong*, 274 F.3d at 1299; *Bucher*, 375 F.3d at 931. According to defendants, the definition of "animal enterpise" is so broad that "interference is not bound by any statutory context" and the statute thus fails to provide defendants with fair notice. Defs.' Reply 8. Although defendants correctly note that the statutory definition of "animal enterprise" is broad,[3] it is not unclear. Defendants appear to be concerned that the Act's requirement

---

[3] "Animal Enterprise" is defined as:
      (A) a commercial or academic enterprise that uses or sells animals or animal products for profit, food or fiber production, agriculture, education, research, or testing;
      (B) a zoo, aquarium, animal shelter, pet store, breeder, furrier, circus, or rodeo, or other lawful competitive animal event; or
      (C) any fair or similar event intended to advance agricultural arts and sciences.

1    that charged conduct be undertaken "for the purpose of damaging or interfering with the operations

2    of an animal enterprise" is easily satisfied.  Defendants are correct that a wide variety of expressive

3    and non-expressive conduct might plausibly be undertaken with the purpose of interfering with an

4    animal enterprise – a public protest, for example, or a private decision not to patronize a particular

5    business – but that conduct is not prohibited under § 43(a)(2)(B).  The purpose requirement is

6    merely one element of the offense.  Beyond asserting that defendants have no notice of what conduct

7    is prohibited, they provide no basis to conclude that the statute's purpose requirement is vague.

8              **E.  The AETA's Intent Requirement Is Not Unconstitutionally Vague**

9         Defendants argue that the AETA's prohibition of actions undertaken "for the purpose of

10   damaging or interfering with the operations of an animal enterprise" requires that a prosecuting

11   attorney and then a jury discern the "subjective intent" of a suspect and thus invites subjective

12   enforcement.

13        In the present case, defendants cite two cases in support of their contention that §§ 43(a)(1)

14   and (2)(B) are unconstitutionally vague because they invite viewpoint discrimination.  In *Foti v City*

15   *of Menlo Park,* 146 F.3d 629, 638 (9th Cir.1998), the court considered an ordinance that prohibited

16   parking with the intent to attract public attention to a sign void for vagueness because it required an

17   enforcing officer to make an ad hoc determination of the purpose for which a car was parked.  The

18   court wrote that "to enforce the ordinance, a Menlo Park law enforcement officer must decipher the

19   driver's subjective intent to communicate from the positioning of tires and the chosen parking spot."

20   *Id.*  The lack of standards for that determination rendered the statute unconstitutionally vague.  *Id.*

21   *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135 (W.D.Wash. 2003)  held that a statute that forbade

22   disclosure of officers' personal information with the "intent to harm or intimidate" void for

23   vagueness because it required a similar determination of subjective intent.

24        However, *Foti* and *Sheehan* dealt directly with speech and restrictions on the speakers' First

25   Amendment rights of expression.  Furthermore, the AETA prohibits conduct with the intent of

26   "damaging or interfering with the operations of an animal enterprise," which provides far more

27   guidance than the statutes in *Foti* and *Sheehan*.  The court concludes above that the "interfering"

28

United States District Court
For the Northern District of California

18 U.S.C. § 43(d).

ORDER DENYING DEFENDANTS' MOTION TO DISMISS—No. CR-09-00263 RMW
JAS                                                    12

**United States District Court**
For the Northern District of California

language is not unconstitutionally vague.  Therefore, a determination that a person has an intent to interfere with an animal enterprise is similarly not unconstitutionally vague.

### F. The AETA Provisions at Issue Are Content Neutral

In *R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377 (1992), the Supreme Court invalidated a municipal crime ordinance prohibiting burning a cross when "one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion, or gender." *Id.* at 380 (citing St. Paul Minn., Legis. Code § 292.02 (1990)).  The Court held that even when a regulation reaches only speech that is proscribable, the First Amendment does not permit content-based distinctions between various instances of a class of proscribable speech.  In so holding, the Court took care to emphasize that although classes of expression like fighting words, obscene speech, and incitements to violence are often called "unprotected speech" the First Amendment does not permit the government to regulate them freely.  *Id.* at 383-384.  The "unprotected speech" designation, in fact, means only that those classes of speech may, consistent with the First Amendment, "be regulated *because of their constitutionally proscribable content* (obscenity, defamation, etc.) – not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to the distinctively proscribable content." *Id.*  (emphasis in original).  For example, a city council could not prohibit only those legally obscene works that contain criticism of the city government.  *Id.* at 384.  Similarly, the Federal Government could not "criminalize only those threats against the President that mention his policy on aid to inner cities." *Id.* at 388.

But the limits on content discrimination within proscribable speech described in *R.A.V.* are not absolute.  First, content discrimination is permissible when the basis for it consists entirely in the reason the class of speech at issue is proscribable in the first place.  *Id.* at 388; *Virginia v. Black*, 538 U.S. 343, 362 (2003).  Thus, the Federal Government can criminalize only threats against the President because the basis for the prohibition – protecting the President from the harm and interference of violent threats – is the same justification that renders threats unprotected (though magnified by national security concerns in the case of the President).  *Id.*  Second, the Court pointed

**United States District Court**
For the Northern District of California

to another basis for valid content-based regulation: when the restricted sub-class (e.g., threats to the President) is justified without reference to the content of the speech. *Id.* at 389. The court finally noted that there may be other bases for content discrimination where "there is no realistic possibility that official suppression of ideas is afoot." *Id.* at 390.

The statute at issue in *R.A.V.* disallowed cross-burning that "arouses anger, alarm, or resentment . . . on the basis of race, color, creed, religion, or gender." *Id.* at 380. Under the statute, the Court wrote, "[t]hose who wish to use "fighting words" in connection with other ideas ---to express hostility, for example, on the basis of political affiliation, union membership, or homosexuality---are not covered. The First Amendment does not permit St. Paul to impose special prohibitions on those speakers who express views on disfavored subjects." *Id.* at 391. "One could hold up a sign saying, for example, that all 'anti-Catholic bigots' are misbegotten; but not that all 'papists' are, for that would insult and provoke violence 'on the basis of religion.'" *Id.* at 391-92. It is this viewpoint-based distinction that rendered the statute unconstitutional.

In *Virginia v. Black*, 528 U.S. 343 (2003), the Supreme Court again considered a law prohibiting cross burning, this time only requiring that the burning be "with the intent of intimidating any person." *Id.* at 348. The Court upheld the statute, because, "[u]nlike the statute in *R.A.V.*, the Viriginia statute does not single out for opprobrium only that speech directed toward 'one of the specified disfavored topics.'" *Id.* at 362 (quoting *R.A.V.*, 505 U.S. at 391). The court also noted that, as a matter of fact, cross burners did not seek solely to intimidate racial or religious minorities, but burned crosses sometimes to give voice to a variety of personal disputes. *Id.* at 363 (citing cases describing cross burning on the basis of a disagreement with an attorney and because of dissatisfaction with a neighbor's complaints in connection with a backyard firing range). The Court also stated that the "First Amendment permits Virginia to outlaw cross burnings done with the intent to intimidate because burning a cross is a particularly virulent form of intimidation." *Id.*

The Ninth Circuit considered another case of content discrimination within unprotected First Amendment speech in *Chakar v. Crogan*, 428 F.3d 1215 (9th Cir. 2005). California Penal Code Section 148.6 made it a misdemeanor to "file [ ] any allegation of misconduct against any peace officer . . . knowing the allegation to be false." *Id.* at 1222. The court held that under *R.A.V.*,

United States District Court
For the Northern District of California

although knowing falsehoods are constitutionally unprotected, the statute's prohibition only of complaints *critical* of peace officers rendered the statute constitutionally infirm as impermissibly regulating speech based on the speaker's viewpoint.  *Id.* at 1227, 1228.

The AETA provisions at issue here concern conduct and the protection of individuals threatened by others using a facility of interstate commerce for the purpose of damaging or interfering with the operation of an animal enterprise.  The conduct targeted by the AETA is more analogous to that which is the focus of the Freedom of Access to Clinics Entrances Act ("FACE") of 1994 (18 U.S.C. § 248) which provides for civil and criminal penalties against anyone who:

> by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services.

18 U.S.C. § 248(a)(1).

In *Norton v. Ashcroft*, 298 F.3d 547, 553 (6th Cir. 2002), the Sixth Circuit upheld the FACE Act as a content-neutral restriction justified by intermediate scrutiny. The court held that, first, the Act prohibited interference with "reproductive health services" generally, which prohibits interference both with abortion-related services and counseling regarding alternatives to abortion. *Id.*  The court noted that the Act had been applied to at least one pro-choice protestor who threatened workers at an anti-abortion facility.  *Id.*  Second, the *Norton* court held that the FACE Act applied to anyone who violated its terms, "regardless of ideology or message." *Id.*  That is, as the Eighth Circuit wrote in *United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996), the Act "would prohibit striking employees from obstructing access to a clinic in order to stop women from getting abortions, even if the workers were carrying signs that said, 'We are underpaid!' rather than "Abortion is wrong!'"  *Id.* at 923.  Given that, the *Norton* court concluded, it is immaterial that "most of the individuals who are prosecuted under the Act are abortion opponents . . . because there is no disparate impact theory under the First Amendment." 298 F.3d at 553 (citing *Soderna*, 82 F.3d at 1376 ("A group cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group.")).

**United States District Court**
For the Northern District of California

1    In *Dinwiddie*, the defendant argued that the FACE Act's intent provision, which is similar to

2  the purpose requirement in AETA, unconstitutionally selected abortion-related expressive conduct

3  for punishment.  76 F.3d at 922-23.  The court found that the motive requirement accomplished "the

4  perfectly constitutional task of filtering out conduct that Congress believes need not be covered by a

5  federal statute. . . . Congress's use of a motive requirement to single out conduct that is thought to

6  inflict greater individual or societal harm is quite common." *Id.* at 92 (internal quotations and

7  citations omitted); *see also Wisconsin v. Mitchell*, 503 U.S. 476, 487-88 (1993) (holding that a

8  sentence increase for bias-motivated crimes was constitutional).

9    The AETA is not limited to proscribing conduct on one side or the other of a political

10  dispute.  It prohibits intentionally placing another in reasonable fear of death or serious bodily injury

11  "for the purpose of damaging or interfering with the operations of an animal enterprise."  18 U.S.C.

12  §§  43(a)(1) and (2)(B).  Whether those who violate §§ 43(a)(1) and (2)(B) are doing so because of

13  their commitment to animal rights, or worker's pay, or a particular animal enterprise's conduct

14  overseas is irrelevant to establishing a violation.  Indeed, if an animal enterprise made a

15  controversial concession to animal rights activists, and protestors opposing that decision

16  intentionally placed a person in reasonable fear of serious bodily injury for the purpose of damaging

17  the animal enterprise, that conduct too would violate the AETA.  Like the conduct restrictions in the

18  FACE Act, the prohibitions in AETA do not cut cleanly through some well-known ideological

19  divide (i.e., pro-choice/pro-life) nor is the restriction specific enough to pick out any particular

20  viewpoint for disfavor (i.e., abortion, worker's rights, animal rights).   The AETA is therefore not a

21  content-based restriction.

22    **G.  The AETA's Proscription Against Attempts to Violate §§ 43(a)(1) and (2)(B) Is Not
       Overbroad**

23

24    Defendants argue that §§ 43(a)(1) and (2)(C) which makes an attempt to violate §§ 43(a)(1)

25  and (2)(B) unlawful is unconstitutionally overbroad.  Defendants' argument is premised upon a

      technical, nonsensical reading of the AETA.  Defendants assert that "[t]he full offense under

26  (a)(2)(C) reads: 'Whoever [uses interstate commerce] for the purpose of damaging or interfering with

27  the operation of an animal enterprise; and conspires or attempts to do so; shall be punished . . . .'"

28  Def. Stumpo's Mot. to Dis. 18 (modifications in defendants' brief).  Defendants contend, that is, that

"to do so" in § 43(a)(2)(C) refers back *only* to "interfering with the operation of an animal enterprise" under § 43(a)(1).  *Id.*

Defendants' reading results in a vague, broad and erroneous reading of the AETA.  Section 43(a)(1) states the purpose required---damaging or interfering with an animal enterprise---and § 43(a)(2) provides the substantive conduct proscribed, starting with the phrase "in connection with such purpose–."  The subsections of § 43(a)(2) are stated in the disjunctive; a violation of (A), (B), or (C) constitutes a violation.  That is, a person can violate the statute by intentionally damaging an animal enterprise as prohibited in § 43(a)(2)(A), or by intentionally placing a person in reasonable fear of death or serious bodily injury as described in § 43(a)(2)(B), or, finally, by conspiring or attempting to violate subsections (A) or (B).  Defendants advance no argument for why the attempt provision, properly understood, is overbroad, and the court concludes that it is not.

### III.  ORDER

For the foregoing reasons, the court denies defendants' motion to dismiss the indictment on the basis of defendants' facial challenge to the constitutionality of the AETA.

DATED:      10/28/09

RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Defendants:**

| | |
|---|---|
| J. Tony Serra | sbrown@pier5law.com |
| Kali Saveria Grech | ksgrech@gmail.com |
| Omar C. Figueroa | omar@stanfordalumni.org |
| Robert Jay Bloom | bbloom222@hotmail.com |
| James McNair Thompson | jmtesq@verizon.net |
| Thomas Joseph Nolan , Jr | tnolan@nablaw.com |
| Rachel Anne Meeropol | rachelm@ccrjustice.org |

**Counsel for United States:**

| | |
|---|---|
| Elise Becker | elise.becker@usdoj.gov |
| Grant P. Fondo | grant.fondo@usdoj.gov |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**       10/28/09                                  JAS
                                            **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California